| | |
|---|---|
| EWING COLE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **DEFENDANT'S AMENDED** |
| | ) **ANSWER, AFFIRMATIVE** |
| COUNTY OF CUMBERLAND NORTH | ) **DEFENSES, AND VERIFIED** |
| CAROLINA, | ) **COUNTERCLAIM** |
| | ) |
| Defendant. | ) |
| | ) |

## ANSWER

Now Comes Defendant County of Cumberland, North Carolina, (the "County"), by and through the undersigned counsel, and responds to Plaintiff's Complaint as follows.

1. The allegations of paragraph 1 are admitted upon information and belief.

2. The allegations of paragraph 2 are admitted upon information and belief.

3. The allegations of paragraph 3 are admitted upon information and belief.

4. The allegations of paragraph 4 are admitted upon information and belief.

5. The allegations of paragraph 5 are admitted upon information and belief.

6. The allegations of paragraph 6 are admitted.

7. It is admitted that N.C. Gen. Stat. § 153A-11 states that a county may sue or be sued as part of its corporate powers. It is admitted that the County is a county. Except as admitted, denied.

8. The allegations of paragraph 8 are admitted.

## JURISDICTION AND VENUE

9. The allegations of paragraph 9 are admitted.

10. The allegations of paragraph 10 are admitted.

11. The allegations of paragraph 11 are admitted.

12. The allegations of paragraph 12 are admitted.

13. The allegations of paragraph 13 are denied.

14. The allegations of paragraph 14 are denied.

15. The allegations of paragraph 15 are denied.

16. The allegations of paragraph 16 are denied.

17. The allegations of paragraph 17 are denied.

## FACTS COMMON TO ALL COUNTS

18. The allegations of paragraph 18 are denied.

19. The allegations of paragraph 19 are admitted.

20. It is denied that the County began soliciting qualifications after it decided it would shutter and replace the existing theater. Except as denied, admitted.

21. The Request for Qualifications is a written document and is the best evidence of its contents. Except as admitted, denied.

22. It is admitted that the Agreement was effective as of November 28, 2023. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

23. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

24. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

25. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

26. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

27. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

28. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

29. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

30. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

31. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

32. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

33. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

34. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

35. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

Case 5:25-cv-00665-D-RN    Document 21    Filed 05/27/26    Page 3 of 21

36. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

37. The Agreement is a written document and is the best evidence of its contents. Except as admitted, denied.

38. It is denied that the revised budget was based on estimates prepared by the County or MBP. The revised budget was based solely upon the estimates of Plaintiff. Except as denied, admitted.

39. It is admitted that Plaintiff issued Change Order Number 1 ("CO#1") on July 31, 2023. CO#1 is a written document and is the best evidence of its contents. Except as admitted, denied.

40. It is admitted that Plaintiff performed services under CO#1. It is denied that CO#1 became legally binding or enforceable by operation of Section 4.2.1 of the Agreement. Except as admitted, denied.

41. The allegations of paragraph 41 are admitted.

42. It is admitted that there was no CMaR under contract with the County as of August 2023. It is denied that the County was required to have a CMaR in place as of August of 2023 and that the lack of a CMaR affected Plaintiff's activity. It is further denied that the building's size increased due to program requests by the County. Plaintiff presented enclosing the loading dock as requiring 7,562 square feet and approximately one million to one and a half million dollars, and as such this would have been a small part of the increases caused by Plaintiff. The building size increased due to Plaintiff's failure to include original program requirements in Plaintiff's original design, such as a secondary entrance, a sufficient amount of bathrooms, lightwells, storage areas, bars on each floor and a speak easy. Plaintiff increased the size of the building to account for

Plaintiff's own design errors. Rather than correcting these design errors, Plaintiff simply increased the square footage of the building. Except as admitted, denied.

43. The allegations of paragraph 43 are denied. By way of further response, it is denied that the project was within budget. Plaintiff was contractually bound to deliver a project within the County's budget and initially failed to do so. It is denied that the County approved a 164,000 square foot building. The CECC approved a concept, but nothing more, and at the time was not given the amount of the increased square footage by Plaintiff.

44. It is admitted that TA Loving/Metcon came on board the project as the CMaR on or about September 18, 2023, and was given drawings to review. Except as admitted, denied.

45. It is admitted that the CMaR provided an initial cost estimate of $128,700,000, one week before EwingCole submitted its Design Development drawings and specifications, which was based upon the design prepared by Plaintiff. It is further admitted that Plaintiff breached the Agreement by failing to design a project within the County's budget. It is further admitted that the project exceeded the County's budget because Plaintiff increased the size of the project by approximately 40,000 square feet to make up for program design omissions and errors by Plaintiff. Except as admitted, denied.

46. It is admitted that the CMaR produced an estimated construction cost of $136,600,000 in mid-December 2023. Except as admitted, denied.

47. It is denied that Plaintiff presented options for meeting the budget or a value engineering budget. Except as denied, admitted.

48. It is denied that the County ever approved a change in the building program. It is denied that the County drove the increase in cost. Plaintiff caused the increase in size due to original program design omissions, and the resulting increase in costs. It is denied that Plaintiff

was unaware of the cost increase prior to the CMaR coming on board the project. Except as denied, admitted upon information and belief.

49. The allegations of paragraph 49 are admitted. By way of further response, this was required because Plaintiff had breached the Agreement by omitting program requirements from the initial design and then completing a redesign that exceeded the County's budget. Further, the CECC instructed Plaintiff that the County would not pay the Plaintiff a fee in connection with this work, and Plaintiff agreed.

50. The allegations of paragraph 50 are admitted.

51. The allegations of paragraph 51 are denied.

52. It is admitted that Plaintiff issued Change Order Number 2 ("CO#2") dated March 4, 2024. CO#2 is a written document and is the best evidence of its contents. Except as admitted, denied.

53. It is admitted that Plaintiff did not initially receive notice not to proceed with CO#2. It is denied that CO#2 was properly served upon the County. It is further denied that Section 4.2.1 of the Agreement was legally valid or enforceable and that it operated to create a binding agreement for CO#2. It is admitted that Plaintiff billed for CO#2 services. It is denied that Plaintiff was due any compensation for CO#2 services. Except as admitted, denied.

54. It is admitted that the County initially, by mistake, paid for CO#2 services. It is further admitted that those payments were later assigned to CO#1 services, such that all services performed under the base Agreement and CO#1 have been fully paid. Except as admitted, denied.

55. It is denied that the County authorized CO#2. It is further denied that the County was aware of CO#2 on June 17, 2024. It is further denied that the County was made aware that the project was over budget at this time. Except as denied, admitted.

Case 5:25-cv-00665-D-RN    Document 21    Filed 05/27/26    Page 6 of 21

56. It is admitted that the County stopped paying Plaintiff's invoices for a period of time after the County discovered CO#2 and Plaintiff's failure to properly notify the County of the requested CO#2 and the CO#2 related invoices. Except as admitted, denied.

57. The allegations of paragraph 57 are denied.

58. It is admitted the County approved CO#1 in November 2024. It is admitted the County informed Plaintiff in November 2024 that CO#2 was not approved. Except as admitted, denied.

59. It is admitted that Plaintiff sent the County a communication concerning CO#2 on February 17, 2025. Except as admitted, denied.

60. It is admitted that the County suspended the project on March 17, 2025 for 30 days. Except as admitted, denied.

61. It is admitted that Plaintiff notified the County that it was suspending services on or about March 17, 2025. It is admitted that the County notified Plaintiff in April 2025 that it was lifting the suspension of the project. Except as admitted, denied.

62. The allegations of paragraph 62 are admitted.

63. The allegations of paragraph 63 are denied. By way of further response, the County has paid Plaintiff all sums due under the base Agreement and CO#1, and no sums are properly due and owing under CO#2.

64. The allegations of paragraph 64 are denied.

65. It is admitted that the County issued payment to Plaintiff on September 11, 2025, in the amount of $977,615.61, which constituted all amounts owed to Plaintiff. Except as admitted, denied.

66. The allegations of paragraph 66 are denied.

67. The allegations of paragraph 67 are denied.

68. The allegations of paragraph 68 are denied.

69. The allegations of paragraph 69 are admitted.

**COUNT I**
**<u>BREACH OF CONTRACT</u>**

70. The County incorporates the response to the preceding paragraphs as if fully set forth herein.

71. The allegations of paragraph 71 are denied.

72. It is admitted that the base Agreement contained a pre-audit certificate. Except as admitted, denied.

73. The allegations of paragraph 73 are denied.

74. The allegations of paragraph 74 are denied.

75. The allegations of paragraph 75 are denied.

76. The allegations of paragraph 76 are denied.

77. The allegations of paragraph 77 are denied.

78. The allegations of paragraph 78 are denied.

**<u>FIRST AFFIRMATIVE DEFENSE</u>**

Each allegation of the Complaint not specifically admitted above is hereby denied.

**<u>SECOND AFFIRMATIVE DEFENSE</u>**

Plaintiff's claim is barred by Plaintiff's material breach of contract. Plaintiff failed to design the project within the County's budget. Plaintiff failed to give notice to the County's representative, MBP of CO#2 and its subsequent invoices. Plaintiff failed to correct its program omissions from the design within the County's budget. Plaintiff failed to timely inform the County and MBP of

the project's increased square footage.  Plaintiff committed such other breaches as may be shown at trial.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claim is barred by the lack of a valid and enforceable contract.

## FOURTH AFFIRMATIVE DEFENSE

The County has fully performed all obligations owed to Plaintiff.  The County has fully paid all amounts due and owing under the base Agreement and CO#1.  No amounts are due and owing under CO#2.

## FIFTH AFFIRMATIVE DEFENSE

Section 4.2.1 of the Agreement, which purports to allow Plaintiff to unilaterally amend the Agreement by serving a proposed amendment, styled a Change Order, upon the County, and thereafter become a valid amendment to the Agreement, is not a valid or enforceable contractual provision.

## SIXTH AFFIRMATIVE DEFENSE

Even if Section 4.2.1 of the Agreement were valid and enforceable, Plaintiff failed to properly avail itself of this provision because Plaintiff failed to properly serve notice of CO#2 on the County.  The Agreement required Plaintiff to serve proposed change orders on Plaintiff's Representative, MBP of the Carolinas, Inc. ("MBP"), and Plaintiff failed to do so.  Plaintiff also failed to serve subsequent invoices, which purported to charge the County for sums under CO#2 on MBP.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred in whole or in part by the doctrines of waiver and/or estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred in whole or in part by Plaintiff's failure to mitigate damages.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred because the contract Plaintiff seeks to enforce was an illegal contract in that it purported to allow Plaintiff to amend the contract without following statutorily required procedures for amending a contract with a public entity, and Plaintiff attempted to avail itself of this illegal clause.

## TENTH AFFIRMATIVE DEFENSE

Pursuant to the Agreement, any additional sums due Plaintiff based upon amendments to the Agreement were only to be paid based upon Plaintiff's time and material. Plaintiff has failed to submit proposed amendments to the County for time and materials and breached the Agreement by attempting to gain additional compensation otherwise. Pursuant to the terms of the Agreement, to the extent any sum is due to Plaintiff, which is denied, it can only be based upon actual time and materials used by Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent any sums are due Plaintiff under the base Agreement or CO#1, they should be offset by the amount any sums paid to Plaintiff under CO#2.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred in whole or in part because Plaintiff is not entitled under the Agreement or applicable law to be paid additional sums above the base Agreement incurred because of additional work necessitated by the fault or negligence of Plaintiff or Plaintiff's failure to follow the County's instructions or budget restrictions.

## THIRTEENTH AFFIRMATIVE DEFENSE

It is denied that Plaintiff completed the work for which it now seeks payment.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred by the doctrines of sovereign and/or governmental immunity.

## VERIFIED COUNTERCLAIM

NOW COMES Defendant County of Cumberland, North Carolina, (the "County"), by and through the undersigned counsel, pursuant to Rule 13 of the Federal Rules of Civil Procedure and as a Counterclaim against Plaintiff, alleges and says the following:

1. The County is located in the State of North Carolina and body politic and corporate.

2. Upon information and belief, Plaintiff, Ewing Cole, Inc. ("Ewing Cole"), is incorporated in the Commonwealth of Pennsylvania and maintains its principal office and place of business at 100 North Sixth Street, Philadelphia, PA 19106.

3. Upon information and belief, Ewing Cole is authorized to conduct business in North Carolina and at all times relevant hereto has been conducting business in North Carolina by providing architectural, engineering and design services.

## FACTUAL ALLEGATIONS

4. In September 2022, the County issued a RFQ for design services for a multipurpose venue known as the Crown Event Center ("CEC"), to be constructed in downtown Fayetteville, North Carolina (the "Project").

5. The CEC, as initially conceived, was to be a 69,000 to 89,000 square foot building with seating capacity of 2,500-3,000. The initial CEC project budget was $65,000,000.

6. Ewing Cole was selected by the County through the bidding process to provide design services for the CEC.

7. Ewing Cole and the County entered into a contract dated November 28, 2022 and was ultimately fully executed by the parties on January 20, 2023 (the "EC Contract"). The EC Contract used the AIA Document B133-2019 form.

8. A Project Delivery Team ("PDT") was formed for the project, which consisted of members of Ewing Cole, MBP, and County staff. The PDT reported to the Crown Event Center Committee ("CECC"), which consisted of community stakeholders and members of the Cumberland County Board of Commissioners (the "Board"). The CECC reported to the Board, who was the ultimate decision maker for the County with regard to the CEC.

9. Pursuant to §§ 1.1.1 and 1.1.3 of the EC Contract, the initial square footage of the CEC was to be 69,000 to 89,000, and the estimated construction budget was $65,000,000.

10. The initial amount to be paid to Ewing Cole for the EC Contract work was $6,414,012.00, which was split among five phases of work by assigned percentages.

11. The EC Contract required Ewing Cole to send all notices and submittals for the County to both Jermaine Walker, Director of Engineering and Infrastructure for the County, and Matthew DeSilver of MBP.

12. Ewing Cole was also instructed in writing by Mr. DeSilver to send all submittals for the County to him first for review.

13. In connection with the EC Contract, Ewing Cole retained Palacio for the purpose of providing cost estimating services.

14. The EC Contract required Ewing Cole to develop a design for the Project that was within the County's budget and incorporated the County's program requirements.

15. On or about May 3, 2023, Ewing Cole advised the County that the size of the CEC needed to be increased to approximately a 131,500 square feet in order to provide the seating and

amenities desired by the County's program, which resulted in a new project budget of $131,703,300.

16. On or about May 15, 2023, the Board approved the Project increase from 89,000 square feet to 131,500 square feet and a total project budget increase to $131,703,300.

17. On or about July 31, 2023, Ewing Cole submitted to the County a proposed change in services agreement, which added $2,027,438 to Ewing Cole's original contract fee, thereby increasing the total EC Contract amount to $8,576,950. The County required this request for an increase to be submitted as a change order which was presented to and approved by the Board of Commissioners ("CO1").

18. The County retained T.A. Loving-Metcon as the Construction Manager for the Project ("CMaR" or "Construction Manager") on or about September 18, 2023.

19. On or about November 15, 2023, Ewing Cole provided the Construction Manager with its 100% Design Development for pricing as required by the EC Contract.

20. On or about December 13, 2023, the Construction Manager issued a construction budget in the amount of $136,503,793 based on 100% Design Development documents prepared by Ewing Cole. As a result, the total Project budget increased to $163,500.00.

21. Upon information and belief, the construction budget increased as a result of Ewing Cole increasing the size of the CEC to 156,000 square feet. This increase was done without the knowledge or approval of the County and in violation of the terms of the EC Contract. Upon information and belief, Ewing Cole increased the size of the CEC after it was discovered that Ewing Cole's original design included significant design omissions and failed to include required program items, including, without limitation a loading dock, a secondary entrance, a sufficient amount of bathrooms, lightwells, storage areas, bars on each floor and a speak easy.

22. On or about January 16, 2024, during a CECC meeting, Ewing Cole presented its revised design, which expanded the size of the Project to 156,000 square feet and the total Project cost to $163,500,000. The CECC was shocked. In response, the CECC instructed the PDT to come back to its January 22, 2024, meeting with a revised budget within $145 million.

23. At the January 16, 2024 meeting, the CECC advised Bill Koonz from Ewing Cole that no payment would be made to Ewing Cole in connection with this ballooned design or the required redesign to bring the project back into budget. Mr. Koonz acknowledged and agreed.

24. Pursuant to the terms of the EC Contract and the express instructions and agreement at the January 16, 2024 meeting, Ewing Cole was required to perform the redesign at no additional cost.

25. Thereafter, on January 22, 2024, Ewing Cole returned and presented the CECC with a proposed redesign and budget of $144,455,422. The budget presented included an architect fee of $8,500,000, evidencing that the architect fee had not increased in in the budget presented.

26. The budget of $144,455,422 was approved by the CECC on January 23, 2024, and was later approved by the Board on February 5, 2024. This was the last approved budget by the CECC or the Board.

27. In direct violation of the EC Contract, the parties' agreement, and Ewing Cole's representations to the CECC and the Board, on March 5, 2024, Ewing Cole emailed a proposed change in services agreement to Jermaine Walker, which requested an increase of $1,939,858 to its fee, thereby bringing the total fee to $10,516,808 (the "Proposed CO2"). Mr. DeSilver was not copied on this submission as required by the EC Contract.

28.     Other than the single email to Jermaine Walker, Ewing Cole never advised the County or MBP that it intended to increase its fee.  To the contrary, it consistently presented budgets showing the CO1 fee amount to the PDT, CECC, and the Board.  For example, on June 17, 2024, Mr. Koonz made a presentation to the CECC regarding progress on the Project wherein he presented a project budget showing the architectural fee for the project to be $8,500,000.

29.     The County never approved the Proposed CO2 or made an appropriation for the additional cost.

30.     On or about March 13, 2024, Ewing Cole submitted its first invoice showing an increased contract amount of $10,516,808, which was the increased amount identified in Proposed CO2 and includes an additional $1,320,858 for design development fees.  This invoice was submitted even though the proposed CO2 was never approved.

31.     In the March 13, 2024 invoice, Ewing Cole invoiced the County for $554,264.00 in design development services under the Proposed CO2 for its redesign work.

32.     Ewing Cole continued to invoice the County for the unapproved increased design development fee by submitting subsequent invoices in April 2024 seeking $400,000 in design development fees and again in May 2024 seeking $366,594 in design development fees.  All of these fees invoiced were for the unapproved increased design development fee identified in Proposed CO2.

33.     Although required by the EC Contract, Ewing Cole did not submit these invoices to Matthew DeSilver of MBP for review and approval prior to submitting them to the County, or concurrently.

34.     Despite Proposed CO2 never being approved by the County, the County mistakenly paid the invoices for the unapproved Proposed CO2 amounts.  Three invoices were mistakenly

paid by the County totaling $1,320,858 for unapproved design development fees. This amount was mistakenly paid from funds that were appropriated to pay amounts due under the base EC Contract and CO1.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

35. The allegations of paragraphs 1 through 34 of the Counterclaim are hereby realleged and incorporated herein by reference as if fully set forth.

36. The EC Contract is a binding and enforceable agreement between Ewing Cole and the County.

37. The County has complied with all material terms of the EC Contract.

38. Ewing Cole has materially breached the EC Contract by:

   a. Failing to provide Mr. DeSilver with notices, submittals, and invoices for the Project;

   b. Invoicing the County for work for which the EC Contract prohibits Ewing Cole from being paid;

   c. Invoicing the County for work for which Ewing Cole agreed it would not be paid;

   d. Failing to prepare a design within the County's budget;

   e. Failing to include all program requirements in its design;

   f. Accepting payments to which it was not entitled; and,

   g. Such other acts and omissions as may be shown at trial.

39. As a result of Ewing Cole's breach of contract, the County has been damaged and is entitled to the return of the payment mistakenly paid to Ewing Cole in the amount of $1,320,858, plus interest, and judgment for its remaining damages in an amount in excess of $25,000.00.

**SECOND CLAIM FOR RELIEF**
**(Unjust Enrichment – Payments Made by Mistake)**

40. The allegations of paragraphs 1 through 39 of the Counterclaim are hereby realleged and incorporated herein by reference as if fully set forth.

41. The County conferred a benefit upon Ewing Cole by issuing payment in the amount of $1,320,858 for the March 2024, April 2024, and May 2024 invoices by mistake as the County was not contractually obligated to Ewing Cole for this amount and there was no valid contract that entitled Ewing Cole to this payment.

42. Ewing Cole accepted the benefit of the mistaken payments.

43. Ewing Cole understood that the payments were not being provided gratuitously.

44. Ewing Cole has been unjustly enriched by these payments to the detriment of the County.

45. Ewing Cole is still in possession of the funds paid by the County and the County is entitled to those funds.

46. If Ewing Cole is allowed to retain the funds then the County will be damaged and Ewing Cole would be unjustly enriched by receiving payment in excess of what is contractually owed to Ewing Cole.

47. As a result, the County is entitled to a judgment against Ewing Cole in in the amount of $1,320,858, plus interest.

**THIRD CLAIM FOR RELIEF**
**(Declaratory Judgment)**

48. The allegations of paragraphs 1 through 47 of the Counterclaim are hereby realleged and incorporated herein by reference as if fully set forth.

-17-

49. The Proposed CO2 was never approved by the County and no funds were appropriated by the County for its payment. The Proposed CO2 was not pre-audited.

50. Pursuant to the County's Purchasing Policy, only the Board could have approved the Proposed CO2.

51. N.C. Gen. Stat. § 153A-12 requires strict compliance with the County's Purchasing Policy.

52. The Proposed CO2 was never approved by the Board and is not enforceable.

53. The Proposed CO2 was not pre-audited as required by N.C. Gen. Stat. § 159-28 and other applicable law.

54. The requirements of N.C. Gen. Stat. §§ 153A-12 and 159-28 cannot be waived, and neither the EC Contract nor any actions of the County waived them.

55. Section 4.2.1 of the EC Contract purports to waive the legal requirements of N.C. Gen. Stat. §§ 153A-12 and 159-28 and the County's Purchasing Policy.

56. The County is entitled to a declaratory judgment that § 4.2.1 of the EC Contract is invalid and unenforceable as a matter of law.

57. The County is entitled to a declaratory judgment that the Proposed CO2 is invalid and unenforceable as a matter of law.

WHEREFORE, the County prays the Court:

1. Deny and dismiss Plaintiff's claims;

2. Grant a trial by jury;

3. Treat each affirmative defense as an offsetting counterclaim to any amount awarded to Plaintiff pursuant to Fed. R. Civ. P. 8(c)(2) and other applicable law as justice may require;

4. Enter judgment in favor of the County and against Ewing Cole in the amount of $1,320,858, plus interest and judgment for its remaining damages in an amount in excess of $25,000.00 as a result of Ewing Cole's breach of contract and for the return of the payment mistakenly paid to Ewing Cole;

5. Enter judgment in favor of the County and against Ewing Cole in in the amount of $1,320,858, plus interest as Ewing Cole would be unjustly enriched by receiving payment in excess of what is contractually owed to Ewing Cole;

6. Enter judgment declaring that that § 4.2.1 of the EC Contract is invalid and unenforceable as a matter of law;

7. Enter judgment declaring that that the Proposed CO2 is invalid and unenforceable as a matter of law;

8. Tax Plaintiff with the County's costs, including attorney fees, as allowed by law; and,

9. For such other and further relief as the Court deems necessary and proper.

Respectfully submitted this the 27th day of May, 2026.

*/s/* J. Scott Flowers
J. Scott Flowers
N.C. State Bar No. 31525
Claire Collins Dickerhoff
N.C. State Bar No. 44306
Hutchens Law Firm LLP
Post Office Box 2505
Fayetteville, North Carolina 28302
Telephone:     (910) 864-6888
scott.flowers@hutchenslawfirm.com
Claire.dickerhoff@hutchenslawfirm.com
*Attorneys for Defendant*

<u>**VERIFICATION**</u>

I, Clarence Grier, County Manager for Cumberland County, North Carolina, being first been duly sworn, do state on oath: that I am of legal age; that I am under no legal disability; that I am authorized to execute this Verification; and, that I have read the foregoing Verified Counterclaim and it is true to my knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

_____
CLARENCE GRIER
COUNTY MANAGER, CUMBERLAND COUNTY

STATE OF NORTH CAROLINA

COUNTY OF CUMBERLAND

Sworn to and subscribed before me
this 15ᵗʰ day of May , 2026.


_____, Notary Public
My Commission Expires: January 8, 2028

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Carmela E. Mastrianni
Hamilton Stephens Steele and Martin, PLLC
cmastrianni@lawhssm.com
*Counsel for Plaintiff*

Joseph Ciampoli
Thompson Becker, LLC
jciampoli@thompsonbeckerlaw.com
*Counsel for Plaintiff*

This the 27th day of May, 2026.

/s/ J. Scott Flowers
J. Scott Flowers
N.C. State Bar No. 31525
Claire Collins Dickerhoff
N.C. State Bar No. 44306
Hutchens Law Firm LLP
Post Office Box 2505
Fayetteville, North Carolina 28302
Telephone:     (910) 864-6888
scott.flowers@hutchenslawfirm.com
Claire.dickerhoff@hutchenslawfirm.com
*Attorneys for Defendant*